UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 12-370-KKC

CHARLES DAVID NAPIER                                                                             PLAINTIFF

v.                              **OPINION & ORDER**

BREATHITT COUNTY BOARD
OF EDUCATION, *et al.*                                                         DEFENDANTS

\* \* \* \* \* \* \* \* \*

This matter is currently before the Court upon the motion [DE # 48] of the Defendant, the Breathitt County Board of Education (the "BOE"), for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. This motion is fully briefed and is ripe for review. For the reasons set forth below, the BOE's motion for summary judgment will be granted.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiff, Charles David Napier, filed this civil action on December 10, 2012 asserting various federal and state claims against the BOE and other defendants arising out of his employment with the Breathitt County School System [DE #1]. Specifically, Napier alleges that he became employed by the Breathitt County School System on December 1, 2000 as principal at Breathitt County High School. He was promoted to Director of Pupil Personnel in 2003, and in 2005 he was further promoted to Assistant Superintendent. He served as both Director of Pupil Personnel and Assistant Superintendent until he filed for disability retirement in December 2012.

The events relevant to this action began in early 2012 after the FBI began investigating Defendant Arch Turner, Superintendent of the Breathitt County Board of Education. In conjunction with this investigation, Napier was interviewed and provided information to the FBI. Turner was ultimately arrested by the FBI and charged with various federal crimes, including conspiracy to buy votes, providing money to buy votes, trying to get a witness not to give information to authorities, and lying to an FBI agent. *See United States v. Arch Taylor*, Lexington Criminal Action No. 12-cr-30-KKC. After his arrest and before his trial, Turner returned to his position as Breathitt County Superintendent. Napier contends that in an effort to entice Turner to enter into a plea agreement, Turner was allowed to review the information that Napier provided to the FBI. After that, Napier contends that Turner began retaliating against him for his cooperation with the FBI.

Turner was subsequently rearrested and placed in jail. He voluntarily resigned his position on May 11, 2012. On July 24, 2012, Turner plead guilty to one count of the indictment charging him with conspiracy to commit offense to defraud the United States in violation 18 U.S.C. § 371. He was sentenced to twenty-four months imprisonment on November 13, 2012.

Two days after Turner resigned as Superintendent, Defendant Melanie Stevens was hired as Interim Superintendent. Napier contends that Stevens was selected without an application or interview, and that despite his qualifications for the position, he was not even granted an interview. Napier contends that as Interim Superintendent, Stevens continued the pattern of retaliation against him, including threatening to quadruple his work load despite informing him that he was not to work past his 220-day contract. Although his contract was for 220 days, Napier alleges that he regularly worked an additional 20 days, at the request of Defendant Turner, for which he was compensated, as well as an additional 15-20 days, also at the request of Defendant Turner, for which he was not

compensated. Napier also alleges retaliation in the form of reprimands for failing to appear in court, despite never being served with a subpoena, and for failing to attend a staff meeting for a day he had scheduled to be on vacation. He further alleges that his paycheck has been withheld and he was wrongfully held responsible for improper changes to the Breathitt County School Calender. Napier contends that as a result of these actions, he suffers from anxiety and depression, and is unable to work.

In his complaint, Napier asserts the following claims against all of the Defendants: Count I - violation of his Fourteenth Amendment due process rights; Count II - violation of his First Amendment rights; Count III - intentional and unlawful discrimination in violation of KRS 161.164; Count IV - violation of a Kentucky statute, KRS 446.070; Count V - retaliation for whistleblowing, in violation of KRS 61.101; Count VI - state law defamation; and Count VII - state law intentional infliction of emotional distress [DE #1]. In previous rulings, the Court has dismissed all claims against the Defendants, with the exception of Napier's First Amendment retaliation claims against Defendants Turner and Stevens. At this time, Counts I, II, III and V remain pending against the BOE.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Northup Properties, Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 771 (6th Cir. 2009). The moving party, here the BOE, bears the initial burden and must identify "those portions of the pleadings, depositions . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986)(internal citations omitted). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id*. at 322-25. Once the moving party has met its burden of production, the nonmoving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Dixon v. Gonzales*, 481 F.3d 324, 330 (6th Cir. 2007). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 343 (6th Cir. 1993). The mere existence of a scintilla of evidence to support the nonmoving party's position will be insufficient; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007) "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249-50 (citations omitted).

However, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). This duty is particularly relevant in this case, where Napier has failed to provide adequate support for many of his allegations. While he has filed deposition transcripts of the Defendants and other witnesses, he has not provided the Court with a complete copy of his deposition, despite many citations to the record to portions of the deposition not filed. This has made the Court's analysis of the claims before it more difficult. Nevertheless,

even taking Napier's unsupported citations as true, the Court finds that the BOE is entitled to summary judgment on Napier's claims for the reasons stated below.

### III. ANALYSIS

#### A. NAPIER'S CONSTITUTIONAL CLAIMS

In Counts I and II, Napier asserts claims based on the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. A plaintiff can bring a claim under section 1983 when he is deprived "of any rights, privileges, or immunities secured by the Constitution and laws," and as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. A claim against the BOE must be examined by applying a two-pronged inquiry:

(1) whether the plaintiff has asserted the deprivation of a constitutional right at all; and

(2) whether the BOE is responsible for that violation.

*See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). For liability to attach, both questions must be answered in the affirmative. With these principles in mind, the Court turns to Napier's constitutional claims.

##### 1. NAPIER'S FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM

Count I of Napier's complaint asserts a substantive due process claim based on the fundamental right to free speech. This claim, however, is essentially duplicative of his First Amendment retaliation claim. Because Napier's claim under the First Amendment is more applicable to the alleged facts, reliance on substantive due process in inappropriate. *Brandenburg*, 253 F.3d at 900; *Albright v. Oliver*, 510 U.S. 266, 273 (1994)("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of

government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'")(quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Accordingly, the Court will enter summary judgment in favor of the BOE on Napier's Fourteenth Amendment substantive due process claim.

### 2. NAPIER'S FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM

Count I of Napier's complaint also asserts a procedural due process claim based on the Fourteenth Amendment. The Fourteenth Amendment provides that no state shall deprive any person of life, liberty or property without due process of law. U.S. Const. amend XIV, § 1. The Fourteenth Amendment's guarantee of procedural due process assures that the deprivation of life, liberty or property "be preceded by notice and opportunity for a hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1986)(citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 313 (1950)).

When faced with a claim for violation of due process rights, federal courts engage in a two-step analysis. The court first must determine whether a protected property interest exists, and second, what procedures are required to protect that interest. *Singfield v. Akron Metropolitan Housing Auth.*, 389 F.3d 555, 565 (6th Cir. 2004); *Johnson-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990). In support of this claim, Napier contends that he complained of retaliation to the BOE, however, he was never afforded any procedural due process. However, Napier presupposes the existence of a protectable interest that he simply does not possess. "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or

understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Napier argues that he has a property interest in his continued employment based on KRS 161.011. This statute, by its clear terms, applies only to classified employees, defined as "an employee of a local district who is not required to have certification for his position as provided in KRS 161.020. . . . " KRS 161.011(1). However, in his position as Director of Pupil Personnel, Napier is required by statute to hold the "general qualifications of teachers and, in addition, shall hold a valid certificate issued in accordance with the administrative regulations of the Education Professional Standards Board." KRS 159.080(2). Thus, because his position requires him to be certified, Napier is not a classified employee and he cannot rely on KRS 161.011 to create a property interest in continued employment.

Additionally, Napier cannot claim a property interest in any work above and beyond his 220-day contract. While Napier may have previously worked and been paid in excess of his contract, the Defendants have fully explained that any work and pay in excess of his contract was not approved or authorized by the BOE, as required. Without a contract, Napier has no property interest in any work above and beyond that specified in his 220-day contract.

To the extent that Napier claims some property interest associated with filing grievances with the BOE or individual board members, Napier has not identified under what Board Policy, statute or regulation he attempted to file a grievance and then was denied due process. Furthermore, the Board is not authorized to hear personnel matters per Board Policy 03.16. [DE #48-4, p. 452]. For all these reasons, Napier has failed to allege any property interest entitled to protection under the Fourteenth Amendment. Without a protectable property interest, Napier's Fourteenth Amendment

7

procedural due process claim cannot proceed. Accordingly, the BOE is entitled to summary judgment on this claim.

### 3. NAPIER'S FIRST AMENDMENT RETALIATION CLAIM

In Count II of his Complaint, Napier alleges that all the Defendants violated his First Amendment rights by retaliating against him as a result of his cooperation with the FBI. When presented with a First Amendment retaliation claim, the Court must consider three elements:

(1) whether the employee engaged in constitutionally protected speech;

(2) whether the Defendants' adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and

(3) whether the employee's protected speech was a substantial or motivating factor in the adverse action.

*Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir. 1998); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). If the plaintiff can establish these elements, then "the burden of persuasion shifts to the defendant who must show by a preponderance of the evidence that there were other reasons for the adverse action and that the same adverse action would have resulted even if the plaintiff had not engaged in the protected activity at issue." *Bloch*, 156 F.3d at 678.

As a public employee, Napier must also make additional showings to demonstrate that his conduct was constitutionally protected. *Adair v. Charter County of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006); *see e.g. Pickering v. Board of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 574 (1968); *Hardy v. Jefferson Cmty. College*, 260 F.3d 671, 678 (6th Cir. 2001). First, he must show that his speech touched on matters of public interest of concern. *See Connick v. Myers*, 461 U.S. 138, 146 (1983); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001); *Stross*

*v. Mich. Dept. of Corr.*, 250 F.3d 336, 345-46 (6th Cir. 2001). Second, the employee's interest "in commenting upon matters of public concern" must be found to outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568; *see also Connick*, 461 U.S. at 149-52; *Boger v. Wayne County*, 950 F.2d 316, 322 (6th Cir. 1991).

Whether the speech at issue is a matter of public interest or concern is a question of law. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008); *Farhat v. Jopke*, 370 F.3d 580, 589 (6th Cir. 2004); *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000). The Court must consider the content, form and context of the statement based on the whole record. *Connick*, 461 U.S. at 147-48. The Court must distinguish between matters of public concern, which are protected speech, and internal personnel disputes or complaints about an employer's performance, which are not protected. *Rodgers v. Banks*, 344 F.3d 587, 596-97 (6th Cir. 2003). Generally, a matter of public concern is a "matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. In other words, speech relating to "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government" is a matter of public concern. *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001)

Here, there is no doubt that Napier's speech in response to FBI questioning involved matters of great public concern. Statements exposing vote-buying and corruption among school board officials are exactly the type of statements that demand strong First Amendment protections and outweigh any interest in promoting the efficiency of the public service the Defendants provide. *See Soloman v. Royal Oak Township*, 842 F.2d 862, 865-66 (6th Cir. 1988)("speech disclosing public

corruption is a matter of public interest and therefore deserves constitutional protection"). Furthermore, there is no evidence - and the Defendants do not assert - that Napier's statements to the FBI were, in fact, deliberately or recklessly false, and therefore, outside First Amendment protections. Thus, Napier's speech was a matter of public concern deserving of constitutional protection.

Napier has also satisfied the second prong by providing evidence of adverse action. "The term 'adverse action' arose in the employment context and has traditionally referred to actions such as 'discharge, demotions, refusal to [hire], nonrenewal of contracts, and failure to promote.'" *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010)(quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). In First Amendment context, however, the Sixth Circuit has held that "any action that would deter a person of ordinary firmness from exercising protected conduct will suffice, which may include harassment or publicizing facts damaging to a person's reputation." *Id.* In this case, the adverse actions pleaded by Napier are sufficient to create a cause of action. He has come forward with evidence showing that he was not considered for the position of Interim Superintendent, despite his qualifications and the alleged lack of qualifications of the selected candidate, as well as evidence that he suffered threats, intimidation and retaliation. Certainly, these alleged actions could deter any "person of ordinary firmness" from cooperating with the FBI or exercising their free speech rights.

The third prong requires Napier to demonstrate that his protected speech was a substantial or motivating factor in the adverse action. To satisfy this requirement, Napier must point to "'specific, nonclusory allegations' reasonably linking [his] speech to employer discipline." *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 144 (6th Cir. 1997)(quoting *Wright v. Illinois Dep't of*

*Children & Family Servs.*, 40 F.3d 1492, 1500 (7th Cir. 1994)). Here, Napier's exercise of his free speech rights were followed in close proximity by the adverse actions complained of. Additionally, Napier has alleged various threats that, if proven, undeniably show a retaliatory motive. For example, he claims that Turner stated he "would come after" him, that he would "get to read what everyone had given to the FBI and that he would get even," that "if you mess with the bull, you get the horns," and "I have a long memory; Turner don't forget." Furthermore, once Turner was jailed, Napier alleges that Stevens continued the pattern of retaliation, by making various false statements against him, including written reprimands accusing him of insubordination and neglect of duty. These allegations are sufficient to satisfy the third element of a prima facie First Amendment retaliation claim.

While Napier has succeeded in establishing a *prima facie* claim for First Amendment retaliation, he has failed to establish that the BOE is liable for this claim under § 1983. Napier cannot base his claim against the BOE solely on the individual Defendants' conduct, for respondeat superior is not available as a theory of recovery under § 1983. Rather, Napier must show that the BOE itself is the wrongdoer. *Collins*, 503 U.S. at 122. Under *Monell*, the BOE cannot be found liable unless Napier can establish that an officially executed policy, or even the toleration of a custom within the school district, leads to, causes, or results in the deprivation of a constitutionally protected right. *Monell*, 436 U.S. at 690-91. Napier does not allege that the retaliation resulted from an officially enacted policy or a tolerated custom. Even if the Court were to construe his complaint to assert such a claim, there is simply no evidence of a policy or custom sufficient to support *Monell* liability. Accordingly, the BOE is entitled to summary judgment on Napier's First Amendment claim.

## B. NAPIER'S STATE LAW CLAIMS

In Count III, Napier alleges "political discrimination" based on KRS 161.164. This statute provides, in relevant part, as follows:

(2) No candidate for school board shall solicit or accept any political assessment, subscription, contribution, or service of any employee of the school district.
(3) No person shall use or promise to use, directly or indirectly, any official authority or influence, whether possessed or anticipated, to secure or attempt to secure for any person an appointment or advantage in appointment to a position as teacher or employee of any district board of education, or an increase in pay or other advantage in employment in any such position, for the purpose of influencing the vote or political action of any person.
(4) No teacher or employee of any district board of education shall be appointed or promoted to, or demoted or dismissed from, any position or in any way favored or discriminated against with respect to employment because of his political or religious opinions or affiliations or ethnic origin or race or color or sex or age or disabling condition.

KRS 161.164. Kentucky courts have construed this statute as being "enacted to prevent superintendents and boards of education from perpetuating transfers and demotions as a political 'vendetta' or reprisal for a school board employee's political views or affiliations." *Calhoun v. Cassady*, 534 S.W.2d 806, 808 (Ky. 1976). Napier has failed to allege what "political opinion" he expressed that allegedly resulted in the alleged adverse employment actions. In fact, he admitted that he was not pressured to support a particular candidate in any Board of Education election. Rather, Napier only alleges that the adverse action was taken against him due to his cooperation with the FBI, not because of any political views or opinions he held or expressed. Without more, Napier's claim based on KRS 161.164 fails. Accordingly, the BOE is entitled to summary judgment on Napier's political discrimination claim contained in Count III.

In Count V of his complaint, Napier alleges a violation of Kentucky's Whistleblower Act, KRS 61.101 *et seq.* This statute provides:

> No employer shall subject to reprisal . . . any employee who in good faith reports, discloses, [or] divulges . . . any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety.

KRS. 61.102. In order to demonstrate a violation Kentucky's Whistleblower Act, Napier must establish four elements: (1) the employer is an officer of the state; (2) the employee is employed by the state; (3) the employee made or attempted to make a good faith report or disclosure of a suspected violation of state or local law to an appropriate body or authority; and (4) the employer took action or threatened to take action to discourage the employee from making such a disclosure or to punish the employee for making such a disclosure. *Davidson v. Com., Dep't of Military Affairs*, 152 S.W.3d 247, 251 (Ky.Ct.App. 2004)(citing *Woodward v. Com.*, 984 S.W.2d 477, 480-81 (Ky. 1998). The BOE has conceded the first two elements but contends that Napier has abandoned this claim by failing to allege any report of suspected mismanagement, waste, fraud, abuse of authority related to the Board of Education or that he suffered any adverse employment action as a result of such disclosure. The Court agrees. While Napier allegedly attempted to file grievances with the BOE, he does not allege that those grievances contained accusations of the type required to sustain a claim under this statute. It is not the Court's responsibility to search the entire record to uncover evidence to support Napier's claim. Rather, Napier "has an affirmative duty to direct the court's attention to those specific portions of the record upon which [he] seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d at 665. He has failed to do so. As a result,

the BOE is entitled to summary judgment on Napier's claim based on the Kentucky Whistleblower Act.

IV. **CONCLUSION**

For the reasons stated above, the Court hereby **ORDERS** that the motion Defendant BOE for summary judgment [DE #48] is **GRANTED** and the BOE is **DISMISSED** as a defendant to this action.

This July 8, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY