UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 12-370-KKC

CHARLES DAVID NAPIER                                                                                        PLAINTIFF

v.                                                **OPINION & ORDER**

BREATHITT COUNTY BOARD
OF EDUCATION, *et al.*                                                                                      DEFENDANTS

\* \* \* \* \* \* \* \* \*

This matter is currently before the Court upon the motions [DE ## 47, 49, and 50] for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure filed by the Defendants, Shirley Hudson, individually and in her official capacity as a member of the Breathitt County Board of Education, Ina Southwood, individually and in her official capacity as a member of the Breathitt County Board of Education, Arch Turner, individually and in his official capacity as former superintendent of the Breathitt County Board of Education, Melanie Stevens, individually and in her official capacity as Interim Superintendent of the Breathitt County Board of Education, and Bobby Gross, individually and in his official capacity as a former member of the Breathitt County Board of Education. The motions are fully briefed and are ripe for review. For the reasons set forth below, the motions for summary judgment will be granted in part and denied in part.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiff, Charles David Napier, filed this civil action on December 12, 2012 asserting various federal and state claims against these Defendants and the Breathitt County Board of Education ("BOE") arising out of his employment with the Breathitt County School System [DE #1].

Specifically, Napier alleges that he became employed by the Breathitt County School System on December 1, 2000 as principal at Breathitt County High School. He was promoted to Director of Pupil Personnel in 2003, and in 2005 he was further promoted to Assistant Superintendent. He served as both Director of Pupil Personnel and Assistant Superintendent until he filed for disability retirement in December 2012.

The events relevant to this action began in early 2012 after the FBI began investigating Defendant Arch Turner. In conjunction with this investigation, Napier was interviewed and provided information to the FBI. Turner was ultimately arrested by the FBI and charged with various federal crimes, including conspiracy to buy votes, providing money to buy votes, trying to get a witness not to give information to authorities, and lying to an FBI agent. *See United States v. Arch Turner*, Lexington Criminal Action No. 12-cr-30-KKC. After his arrest and before his trial, Turner returned to his position as Breathitt County Superintendent. Napier contends that in an effort to entice Turner to enter into a plea agreement, Turner was allowed to review the information that Napier provided to the FBI. After that, Napier contends that Turner began retaliating against him for his cooperation with the FBI.

Turner was subsequently rearrested and placed in jail. He voluntarily resigned his position on May 11, 2012. On July 24, 2012, Turner plead guilty to one count of the indictment charging him with conspiracy to commit offense to defraud the United States in violation of 18 U.S.C. § 371. He was sentenced to twenty-four months imprisonment on November 13, 2012.

Two days after Turner resigned as Superintendent, Defendant Melanie Stevens was hired as Interim Superintendent. Napier contends that Stevens was selected without an application or interview, and that despite his qualifications for the position, he was not even granted an interview.

As Interim Superintendent, Napier contends that Stevens continued Turner's pattern of retaliation against him, including informing him that he was not to work past his 220-day contract, despite her statement that she planned on "quadrupling" his work load. Napier also alleges that he received reprimands for failing to appear in court, despite never being served with a subpoena, and for failing to attend a staff meeting for a day he had scheduled to be on vacation. He further alleges that his paycheck has been withheld and he was accused of making wrongful changes to the Breathitt County School Calender. Napier contends that as a result of these actions, he suffers from anxiety and depression, and is unable to work.

In his complaint, Napier asserts the following claims against all of the Defendants: Count I - violation of his Fourteenth Amendment due process rights; Count II - violation of his First Amendment rights; Count III - intentional and unlawful discrimination in violation of KRS 161.164; Count IV - violation of a Kentucky statute, KRS 446.070; Count V - retaliation for whistleblowing, in violation of KRS 61.101; Count VI - state law defamation; and Count VII - state law intentional infliction of emotional distress [DE #1]. In previous rulings, the Court has dismissed various counts against the Defendants. At this time, Counts I, II, and III remain pending against Hudson, Southwood, Turner, Stevens and Gross in their individual and official capacities, and Counts IV, VI, and VII remain pending against them in their individual capacities only. A separate motion for summary judgment has been filed by the BOE and remains pending.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Northup Properties, Inc. v.*

*Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 771 (6th Cir. 2009). The moving parties, here the Defendants, bear the initial burden and must identify "those portions of the pleadings, depositions . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(internal citations omitted). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id*. at 322-25. Once the moving party has met its burden of production, the nonmoving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Dixon v. Gonzales*, 481 F.3d 324, 330 (6th Cir. 2007). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 343 (6th Cir. 1993). The mere existence of a scintilla of evidence to support the nonmoving party's position will be insufficient; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007) "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249-50 (citations omitted).

However, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). This duty is particularly relevant in this case, where Napier has failed to provide adequate support for many of his allegations. While he has filed deposition transcripts of the Defendants and other witnesses, he has not provided the Court with a

complete copy of his deposition, despite many citations to the record to portions of the deposition not filed. This has made the Court's analysis of the claims before it more difficult.

## III. ANALYSIS

### A. OFFICIAL CAPACITY CLAIMS

The Defendants first argue that the claims remaining against them in their official capacities are redundant and should be dismissed. The Court agrees. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *C.K. v. Bell County Bd. of Educ.*, 839 F.Supp.2d 881, 885 (E.D.Ky. 2012); *Claybrook v. Birchwell*, 199 F.3d 350, 356 n.4 (6th Cir. 2000) ("An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents"). Thus, the remaining claims against Defendants Hudson, Southwood, Turner, Stevens and Gross in their official capacities will be dismissed, and summary judgment will be entered in favor of these Defendants in their official capacities.

### B. NAPIER'S CONSTITUTIONAL CLAIMS

Next, the Court turns to Napier's constitutional claims. In Counts I and II of his Complaint, Napier asserts claims based on the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. The Defendants argue that they are entitled to the absolute defense of qualified immunity on these claims. "Qualified immunity is a government official's 'entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 2000 (2001)(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The Supreme Court has delineated a two-part test in order to determine the applicability of the qualified immunity defense. *Saucier*, 533 U.S. at 194. First, the court must ask whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" *Id.* at 201. If the party asserting the

5

injury was deprived of his constitutional rights, then the court must go on to ask whether that right was clearly established. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id*. at 202. With these principles in mind, the Court turns to Napier's constitutional claims.

    1.    NAPIER'S FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM

In Count I of his complaint, Napier claims that the Defendants have violated his Fourteenth Amendment substantive due process rights based on the fundamental right to free speech. This claim, however, is essentially duplicative of his First Amendment retaliation claim. Because Napier's claim under the First Amendment is more applicable to the alleged facts, reliance on substantive due process in inappropriate. *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001); *Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'")(quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Accordingly, the Defendants are entitled to qualified immunity on this claim and summary judgment will be entered in their favor.

    2.    NAPIER'S FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM

Count I of Napier's complaint also asserts a procedural due process claim based on the Fourteenth Amendment. The Fourteenth Amendment provides that no state shall deprive any person of life, liberty or property without due process of law. U.S. Const. amend XIV, § 1. The Fourteenth

Amendment's guarantee of procedural due process assures that the deprivation of life, liberty or property will "be preceded by notice and opportunity for a hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1986)(citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 313 (1950)).

When faced with a claim for violation of due process rights, federal courts engage in a two-step analysis. The court first must determine whether a protected property interest exists, and second, what procedures are required to protect that interest. *Singfield v. Akron Metropolitan Housing Auth.*, 389 F.3d 555, 565 (6th Cir. 2004); *Johnson-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990). In support of this claim, Napier contends that he complained of retaliation to some of the Defendants and the Board of Education, but was never afforded any procedural due process. This claim fails because Napier presupposes the existence of a protectable interest that he simply does not possess. "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Napier argues that he has a property interest in his continued employment based on KRS 161.011. This statute, by its clear terms, applies only to classified employees, defined as "an employee of a local district who is not required to have certification for his position as provided in KRS 161.020. . . . " KRS 161.011(1). However, in his position as Director of Pupil Personnel, Napier is required by statute to hold the "general qualifications of teachers and, in addition, shall hold a valid certificate issued in accordance with the administrative regulations of the Education

7

Professional Standards Board." KRS 159.080(2). Thus, because his position requires him to be certified, Napier is not a classified employee and he cannot rely on KRS 161.011 to create a property interest in continued employment.

Additionally, Napier cannot claim a property interest in any work above and beyond his 220-day contract. While Napier may have previously worked and been paid in excess of his contract, the Defendants have fully explained, and Napier does not dispute, that any work and pay in excess of his contract was never approved or authorized by the BOE, as required. Without a contract, Napier has no property interest in any work above and beyond that specified in his 220-day contract.

To the extent that Napier claims some property interest associated with filing grievances with the BOE or individual board members, Napier has not identified under what Board Policy, statute or regulation he attempted to file a grievance and then was denied due process. Furthermore, the Board is not authorized to hear personnel matters per Board Policy 03.16. [DE #48-4, p. 452]. For all these reasons, Napier has failed to allege any property interest entitled to protection under the Fourteenth Amendment. As a result, the Defendants are entitled to qualified immunity on this claim, and summary judgment will be entered in their favor.

3. **NAPIER'S FIRST AMENDMENT RETALIATION CLAIM**

In Count II of his Complaint, Napier alleges that all the Defendants violated his First Amendment rights by retaliating against him as a result of his cooperation with the FBI. When presented with a First Amendment retaliation claim, the Court must consider three elements:

(1) whether the employee engaged in constitutionally protected speech;

(2) whether the Defendants' adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity;

> (3) whether the employee's protected speech was a substantial or motivating factor in the adverse action.

*Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). If the plaintiff can establish these elements, then "the burden of persuasion shifts to the defendant who must show by a preponderance of the evidence that there were other reasons for the adverse action and that the same adverse action would have resulted even if the plaintiff had not engaged in the protected activity at issue." *Bloch*, 156 F.3d at 678.

As a public employee, Napier must also make additional showings to demonstrate that his conduct was constitutionally protected. *Adair v. Charter County of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006); *see e.g. Pickering v. Board of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 574 (1968); *Hardy v. Jefferson Cmty. College*, 260 F.3d 671, 678 (6th Cir. 2001). First, he must show that his speech touched on matters of public interest of concern. *See Connick v. Myers*, 461 U.S. 138, 146 (1983); *Stross v. Mich. Dept. of Corr.*, 250 F.3d 336, 345-46 (6th Cir. 2001); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001). Second, the employee's interest "in commenting upon matters of public concern" must be found to outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568; *see Connick*, 461 U.S. at 149-52; *Boger v. Wayne County*, 950 F.2d 316, 322 (6th Cir. 1991).

Whether the speech at issue is a matter of public interest or concern is a question of law. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008); *Farhat v. Jopke*, 370 F.3d 580, 589 (6th Cir. 2004); *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000). The Court must consider the content, form and context of the statement based on the whole record. *Connick*,

461 U.S. at 147-48. Generally, a matter of public concern is a "matter of political, social, or other concern to the community." *Id*. at 146. In other words, speech relating to "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government" is a matter of public concern. *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001).

Here, there is no doubt that Napier's speech in response to FBI questioning involved matters of great public concern. Statements exposing vote-buying and corruption among school board officials are exactly the type of statements that demand strong First Amendment protections and outweigh any interest in promoting the efficiency of the public service the Defendants provide. *See Soloman v. Royal Oak Township*, 842 F.2d 862, 865-66 (6th Cir. 1988)("speech disclosing public corruption is a matter of public interest and, therefore, deserves constitutional protection"). Furthermore, there is no evidence - and the Defendants do not assert - that Napier's statements to the FBI were, in fact, deliberately or recklessly false, and therefore, outside First Amendment protections. Thus, Napier's speech was a matter of public concern deserving of constitutional protection.

Napier has also satisfied the second prong by providing evidence of adverse action. "The term 'adverse action' arose in the employment context and has traditionally referred to actions such as 'discharge, demotions, refusal to [hire], nonrenewal of contracts, and failure to promote.'" *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010)(quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). In the First Amendment context, however, the Sixth Circuit has held that "any action that would deter a person of ordinary firmness from exercising protected conduct will [constitute a sufficient adverse action], which may include harassment or publicizing facts

damaging to a person's reputation." *Id.* In this case, the adverse actions pleaded by Napier are sufficient to satisfy this requirement. He has come forward with evidence showing that he was not considered for the position of Interim Superintendent, despite his qualifications and the alleged lack of qualifications of the selected candidate, as well as evidence that he suffered threats, intimidation and retaliation. Certainly, these alleged actions could deter any "person of ordinary firmness" from cooperating with the FBI or exercising their free speech rights.

The third prong requires Napier to demonstrate that his protected speech was a substantial or motivating factor in the adverse action. To satisfy this requirement, Napier must point to "'specific, nonclusory allegations' reasonably linking [his] speech to employer discipline." *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 144 (6th Cir. 1997)(quoting *Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1500 (7th Cir. 1994)). Here, Napier's exercise of his free speech rights were followed in close proximity by alleged retaliatory conduct by Defendants Turner and Stevens. Additionally, Napier has alleged various threats that, if proven, undeniably show a retaliatory motive. For example, he claims that Turner stated he "would come after" him, that he would "get to read what everyone had given to the FBI and that he would get even," that "if you mess with the bull, you get the horns," and "I have a long memory; Turner don't forget." Even though Turner was in jail at the time, Napier alleges that Turner was directing the action of the BOE. These allegations, if proven, are sufficient to show that his protected speech was a motivating factor in Turner's actions against him.

With respect to Defendant Stevens, Napier has alleged that she knew of his cooperation with the FBI and then put in place retaliatory measures designed to force him to resign or be fired. Specifically, he claims that Stevens stated that she planned on "quadrupling" his work load and

reassigning duties to him for which he was not trained. Additionally he claims that she filed unwarranted written reprimands against him and improperly withheld his payment. If proven, these allegations are also sufficient to show that Napier's protected speech was a motivating factor in Stevens' actions against him.

Napier, however, has failed to come forward with any evidence that his protected speech was a substantial or motivating factor in any action taken by Defendants Hudson, Southwood and Gross. He has not alleged that they were aware of his cooperation with the FBI, or that they took any specific actions as a result of his cooperation with the FBI. Accordingly, because Napier has failed to plead facts or evidence to raise a genuine dispute of fact on his First Amendment claim against Defendants Hudson, Southwood, and Gross, they are entitled to qualified immunity on this claim and summary judgment will be entered in their favor.

Napier has established the prima facie elements of a First Amendment retaliation claim against Defendants Turner and Stevens, so "the burden of persuasion shifts to the defendant[s] who must show by a preponderance of the evidence that there were other reasons for the adverse action and that the same adverse action would have resulted even if the plaintiff had not engaged in the protected activity at issue." *Bloch*, 156 F.3d at 678. This is a substantially higher hurdle to surpass, particularly where, as is the case here, the moving party bears the burden of persuasion on this issue at trial. *Cockrel*, 270 F.3d at 1057. Neither Turner nor Stevens has offered any evidence to satisfy this burden. Thus, considering the evidence in the light most favorable to Napier, the alleged facts, if proven, show that Turner and Stevens violated Napier's First Amendment rights.

In order to determine if Turner and Stevens are entitled to qualified immunity, then, the Court must determine whether Napier's right was clearly established such that a reasonable person would

know that the alleged adverse actions taken against Napier violated his First Amendment rights. The Sixth Circuit thoroughly addressed whether an employee's First Amendment right to be free of retaliation is clearly established in *Williams v. Kentucky*, 24 F.3d 1526, 1533-38 (6th Cir. 1994). There, the court noted that in free speech cases, the employee's right to speak must be "so clear at the time in question that reasonable minds could not differ on the constitutionality." *Id*. at 1534. The court acknowledged that because *Pickering* and *Connick* require courts to balance competing interests to determine if an employee's speech is protected, "in many public employee free speech cases it would be unclear to a reasonable official what the outcome of the balancing inquiry should be." *Id*. at 1537. "However, the greater the speech's relationship to a matter of public concern and the more minimal the effect on office efficiency the more likely a reasonable person would be to understand that the employer's actions violated the Constitution." *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 263 (6th Cir. 2006). Here, Napier's right to cooperate with the FBI in a corruption investigation involving the Superintendent of the Breathitt County Board of Education was a matter of great public concern and had minimal effect on office efficiency. Certainly, a reasonable person would understand that Turner's conduct, as alleged, violated the Constitution. As a result, Defendants Turner and Stevens are not entitled to qualified immunity on this claim, and their motions for summary judgment on this claim will be denied.

### C. NAPIER'S STATE LAW CLAIMS

In Count III, Napier alleges "political discrimination" based on KRS 161.164**.** This statute provides, in relevant part, as follows:

> (2) No candidate for school board shall solicit or accept any political assessment, subscription, contribution, or service of any employee of the school district.

13

> (3) No person shall use or promise to use, directly or indirectly, any official authority or influence, whether possessed or anticipated, to secure or attempt to secure for any person an appointment or advantage in appointment to a position as teacher or employee of any district board of education, or an increase in pay or other advantage in employment in any such position, for the purpose of influencing the vote or political action of any person.
>
> (4) No teacher or employee of any district board of education shall be appointed or promoted to, or demoted or dismissed from, any position or in any way favored or discriminated against with respect to employment because of his political or religious opinions or affiliations or ethnic origin or race or color or sex or age or disabling condition.

KRS 161.164. Kentucky courts have construed this statute as being "enacted to prevent superintendents and boards of education from perpetuating transfers and demotions as a political 'vendetta' or reprisal for a school board employee's political views or affiliations." *Calhoun v. Cassady*, 534 S.W.2d 806, 808 (Ky. 1976). Napier has failed to allege what "political opinion" he expressed that allegedly resulted in the alleged adverse employment actions. In fact, he admitted that he was not pressured to support a particular candidate in any Board of Education election. Rather, Napier only alleges that the adverse action was taken against him due to his cooperation with the FBI, not because of any political views or opinions he held or expressed. Without more, Napier's claim based on KRS 161.164 fails. Accordingly, the Defendants are entitled to summary judgment on Napier's political discrimination claim contained in Count III.

In Count IV, Napier asserts a claim based on KRS 466.070, Kentucky's negligence per se statute, in an effort to recover monetary damages for an alleged violation of KRS 161.164. Because Napier cannot sustain a claim for political discrimination under KRS 161.164, his negligence claim also fails, and summary judgment will be awarded to the Defendants on this claim.

Count VI of Napier's complaint asserts a claim for defamation. Under Kentucky law, defamation is "the injury to the reputation of a person in public esteem" and requires "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Harstad v. Whiteman*, 338 S.W.3d 804, 810 (Ky.Ct.App. 2011); *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004). While he points to specific defamatory statements by Stevens, he makes no allegations of defamation against Hudson, Southwood, Turner, or Gross. Accordingly, the Court will enter summary judgment in favor of these Defendants on Napier's defamation claim.

As to his defamation claim against Stevens, Napier alleges that she made derogatory statements about him in private reprimands he received. Without any allegation of "publication," this claim is not actionable. Napier also alleges that Stevens defamed him by notifying the Kentucky Education Professional Standards Board of her belief that he was involved in the unapproved 2011-12 academic calendar. However, Napier testified that he had input and oversight into the formation of the academic calendar, and there is no dispute that the calendar was subsequently rejected by the Kentucky Department of Education or that Breathitt County Schools lost state funds as a result. Because truth is an absolute defense to defamation, Napier's claim based on the calendar cannot proceed. *See Biber v. Duplicator Sales & Service, Inc.*, 155 S.W.3d 732, 737 (Ky.App.2004).

Finally, Napier alleges that Stevens "made false statements that I had defied a court ordered subpoena" and "insinuated that I had played a role in my step-daughter getting the Gear Up job." While it is disputed who issued the subpoena requiring Napier to attend the hearing, there is no dispute that a subpoena was issued and that Napier did not attend the scheduled hearing. Whether

15

or not he was scheduled to be on vacation that day, and what procedures should have been taken to ensure a representative attended the court hearing are simply not relevant to this claim. Napier has failed to establish the falsity of any alleged statement in conjunction with the issuance of the subpoena, and thus, this claim cannot proceed.

The "insinuation" that he improperly got a relative a position with the Board of Education is only an opinion. "[A]n expression of opinion, as opposed to a defamatory statement of fact, is entitled to an absolute privilege." *Biber*, 155 S.W.3d at 737. Therefore, his defamation claim based on this allegation fails. For these reasons, Napier has failed to establish a claim for defamation under Kentucky law against Stevens, and summary judgment will be entered in favor of Stevens on this claim.

Finally, Count VII asserts a claim for intentional infliction of emotional distress, or IIED. To prevail on a claim for IIED, Napier must prove: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress suffered; and (4) the emotional distress was severe. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 795 (6th Cir. 2000); *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999). The Kentucky Supreme Court has stated that it has "set a high threshold for IIED/outrage claims; i.e., that the conduct at issue must be 'a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Stringer*, 151 S.W.3d at 791. While Napier's alleges that the Defendant insulted and/or threatened him and retaliated against him, the allegations do not allege conduct "beyond all possible bounds of decency," "atrocious," or "utterly intolerable." *Whittington v. Whittington*, 766 S.W.2d 73, 74 (Ky.App. 1989); *see also* Restatement

(Second) of Torts, § 46(1). Thus, Napier's allegations fall short of the outrageous conduct sufficient to support a claim for IIED under Kentucky law. As a result, summary judgment will be entered in favor of Defendants Hudson, Southwood, Turner and Stevens on this claim.

## IV. MOTION TO WITHDRAW

Counsel for Defendant Turner, Neal Smith, has filed a motion to withdraw as counsel [DE #65]. He states that the insurance company has declined to provide coverage for Turner. Smith further states that he will continue to represent Defendants Hudson and Southwood in their individual capacities. This motion will be granted, and Turner will be granted thirty days to obtain new counsel.

## V. CONCLUSION

For the reasons stated above, the Court hereby **ORDERS** as follows:

(1) the motion of Defendants Hudson, Southwood, and Turner [DE #47] for summary judgment is **GRANTED IN PART** and **DENIED IN PART** as follows:

   (A) summary judgment will be granted in favor of Defendants Hudson, Southwood, and Turner on all remaining claims against them in their official capacities,

   (B) summary judgment will be granted in favor of Defendants Hudson and Southwood on all remaining claims against them in their individual capacities;

   (C) summary judgment will be granted in favor of Defendant Turner, in his individual capacity, on Napier's claims contained in Counts I, III, IV, VI, and VII; and

   (D) this action **REMAINS PENDING** against Defendant Turner, in his individual capacity, on Napier's First Amendment retaliation claim contained in Count II.;

(2) the motion of Defendant Stevens [DE # 49] for summary judgment is **GRANTED IN PART** and **DENIED IN PART** as follows:

   (A) summary judgment will be granted in favor of Defendant Stevens on all remaining claims against her in her official capacity;

(B) summary judgment will be granted in favor of Defendant Stevens, in her individual capacity, on Napier's claims contained in Counts I, III, IV, VI and VII; and

(C) this action **REMAINS PENDING** against Defendant Stevens, in her individual capacity, on Napier's First Amendment retaliation claim contained in Count II;

(3) the motion of Defendant Bobby Gross [DE #50] for summary judgment is **GRANTED IN FULL**, and Napier's claims against him in his official and individual capacity will be **DISMISSED**; and

(4) the motion of Neal Smith to withdraw as counsel for Defendant Turner [DE #65] is **GRANTED**, and Defendant Turner has 30 days to obtain new counsel.

This July 8, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY